Good morning your honor. David Baines on behalf of the appellant Chang Ru Backman. I'd like to reserve five minutes for rebuttal. I'll briefly go into the facts considering that we're here in front of students. Three women were recruited from rural China who were uneducated and not well educated and through a friend or a relative, they came from the same small village, learned that they could go to America and earn more money. They came to Saipan and they were picked up by someone acting on behalf of a recruiter and first taken to a hotel and then they were taken to a karaoke bar called the Holiday where the same person who picked them up told them you'll be expected to do three things and that is to entertain customers, sing songs, serve drinks and have sex with customers. Now those persons that I've just mentioned, the recruiters, are not part of this case. Ms. Backman, there was no evidence that Ms. Backman had anything to do with the recruitment. It was just by way of background. The three women initially did not engage in prostitution. They only served drinks and sang songs and that will become important later on. They then eventually did become prostitutes and stayed as prostitutes for a period of time. Then Ms. Backman, it's not entirely clear from the record, but Ms. Backman and Ms. Backman had a relationship. They moved to an apartment on their own and sorry, that she had first picked out and then they moved to another apartment. In pre-trial discovery the government disclosed the three statements by each of the women and importantly for the purposes of this appeal, they admitted that they engaged in prostitution after returning. Two of them returned, one went out on her own. In fact, they negotiated about the price, how much they would be paid and they came back. Thereafter, they wrote a letter asking the U.S. government to prosecute the recruiters. They did not mention Ms. Backman. After a multi-week trial, the jury was empaneled after several days of deliberation. They came back with a note saying that they could not reach a verdict. After an Allen charge was read, the jury continued to deliberate and they came back with a not guilty on two of the counts and guilty on one of the counts. It's a little bit surprising because the three witnesses for the government essentially told the same story. The defendant then made a motion for acquittal after the jury verdict, which was denied and hence this appeal. We raised a number of arguments, but because of limitations on time, I'm going to try to narrow my focus. The first argument that I want to begin with is, because it's potentially dispositive, that there was insufficient evidence that the defendant did any act to affect interstate commerce, which is a de novo review. Admittedly, we have to look at the... Well, let me cut to the chase on that. There was evidence that at least one of the clients of the brothel had paid for sex with the victim by a check drawn on an out-of-state bank. Why isn't that sufficient evidence of a connection to interstate commerce? Well, it's not exactly an out-of-state bank. It's Bank of Hawaii, which was doing business in Saipan and the check was drawn on an account on Saipan and deposited into an account on Saipan. What was stipulated to was that the bank cleared the check in Hawaii. That's an out-of-state bank. It seems to me you're mixing up two arguments here. Let's say it was clear that there were ten checks drawn on a bank in New York and it was deposited in New York, so you don't have the ambiguity of whether Hawaii, a Hawaii bank that maintains a branch in Saipan, whether that counts. That's one aspect of it, where you seem to be saying that because the account was in Saipan, it never was interstate. But the other piece seems to be you're saying that the defendant herself had to do something interstate. So would it be your argument that even if there were ten checks drawn on a bank in New York, that that doesn't matter because she didn't do it personally? Well, no, Your Honor. I mean, yes. And if you take a look at all the authority sites Which is it? Yes or no? I'm sorry. She has to do something. There has to be a predicate act. Counsel, I just don't think that's right. What about the Ginian case, where a defendant who had embezzled some money, deposited the check, and as you said, the bank is the one that cleared it. Why isn't that sufficient? Because that case, there was a number of other actions besides that. It wasn't just – it was depositing an out-of-state check. They traveled out of state and then deposited the check there. There, the defendant clearly did something. It wasn't just depositing a check. It was also flying to another state and depositing the check there. Counsel, why do we even have to think about the check of the john here? These women were from outside the country. Now, Ms. Bachman was not responsible for bringing them into Saipan, but once they were in Saipan, she engages in a number of acts to force them into prostitution. Why isn't that a sufficient connection to foreign commerce and satisfy the statute, irrespective of where the check's cleared? Because once the recruitment happened, it was finished. They were now men on Saipan and all their acts were completely within Saipan. There's no – she didn't do any predicate act as required by the statute that affected even foreign commerce. They showed up at her door brought by somebody else. But it's not that she was unaware that they came from somewhere else. These three women didn't even speak English. They were very clearly not from Saipan. Yes. And Ms. Bachman is also herself originally from the PROC. So they obviously spoke Chinese. Right. But this is a matter of affecting foreign commerce in the way that the Supreme Court has used that term, isn't it? Why isn't it? I mean, we've got – even if she doesn't get the – even if she doesn't meet the girls and doesn't know the girls are coming until they get to Saipan, under the way that the court – the broad way that the court has construed the interstate commerce clause and by extension the foreign commerce clause, why isn't it sufficient that we've got victims who are from out of country? Well, because the government argued that it affected interstate commerce, not foreign commerce. And so the – and the government's bound by that? Well, your – that doesn't make sense to me because your claim is that there's insufficient evidence. And regardless of whether the government thought about the evidence or relied on it, if the evidence is in the record, how can you claim insufficient evidence? Well, it was insufficient evidence before the jury, Your Honor, because, again, she didn't do any act herself. And it has to be a predicate act. It's not that she was part of a venture that affected foreign commerce. These are not unindicted co-conspirators. Did the jury hear evidence that she deposited the check from the Bank of Hawaii? Yes. Located on Saipan. Are you going to have a chance to talk about the 412 argument? Yes, Your Honor. I hope so. So to go – move on to the Rule 412, the standard is again that Rule 412 regulates and does not allow in evidence of other sexual conduct. And other within the committee rules says, well, you know, we've got some flexibility here. And if it's intrinsic to the crime, then it's not other sexual conduct. It's one person. I'll cut directly. I know you're limited on time. Let me cut directly to my question. So with respect to the 412 argument, if you were arguing that you wanted to admit evidence that the women had engaged in prostitution in the PROC before they arrived in Saipan, I think your argument would be much stronger. But why is evidence that they continued to engage in prostitution after Ms. Bachman was arrested and investigated and arrested and indicted? Is that evidence that they had a prior proclivity to do so? I mean, it seems to me that the inference is that no, once Ms. Bachman recruits them, you know, they sort of feel like the game is done. They're sort of tarnished, and therefore there's no marginal downside to engaging in prostitution, which is the only way they had of supporting themselves in Saipan, which is part of the problem in the first place. So that the post-arrest conduct is really irrelevant. Pre-arrest, you might have an argument, but that's not your argument at all. No, it is, Your Honor. Absolutely it is. There was a long period of investigation, and the they returned to work. So when Ms. Bachman was arrested... Okay, I'm a little confused. Do you have any evidence that they engaged in prostitution prior to arriving in Saipan? No. Okay. I'm saying prior to arrest. Your point was, well, if they engaged in prostitution after arrest, then... That's what you were trying to get introduced, was that they returned to prostitution after Bachman was out of the picture. Well, at least after they went to the apartment and then came back, right? Yes. She hasn't been arrested yet, I don't think, quite. But to Judge Bivey's purposes, I don't think that matters very much. Your point, I think, is that they were at the brothel, they sort of escaped, so to speak, and got some distance from your client. Yes. And then at some point chose to go back. To the same place and to the same person. Right. But Judge Bivey's question really goes to, and I have the same question, which is that these three women who didn't speak English and who'd been... They were completely vulnerable. What else were they supposed to do? Well, there were three. One went off on her own to be a prostitute. And actually, I would agree that Rule 412, I think, would exclude that. But I think to the other two that returned to Ms. Bachman, the fiend, that the government... I'm sorry, Ms. Bachman's only defense, her sole defense, was that there was no coercion and there was no allegation of force. Counsel, I have a completely different question. Both parties have argued the merits of this, but that was not the ground for the district court's decision to exclude the evidence. It was excluded on procedural grounds that the motion failed to comply with a portion of the rule that requires specificity in a description of the evidence and that it was an untimely... The untimeliness was excused, but the court was concerned with the lack of specificity and, in particular, the lack of description as to which victim was involved in the evidence so that the victims could be present for the hearing as required by the rule. So regardless of the merits, that's not the ground on which the district court acted. So why did the district court abuse its discretion in declining to allow the evidence for failure to comply with the procedural requirements of the rule? Well, because, first of all, Rule 412 does not apply because it's other sexual conduct. It's intrinsic. That's one argument. And then the second, it should have been excluded underneath the constitutional grounds. I mean, the... And she basically said, well, yeah, you missed the time requirement that I set, me the judge, not the time... Well, she excused that. She said, she posed a fine and said, let's move on. But, and then she said that the rule requires a specificity in describing the proposed evidence and that wasn't done and, therefore, she wasn't going to allow in whatever it was that she didn't know what it was. So why is that an abusive discretion? Again, Your Honor, also, it was an abusive discretion because the, well, first of all, the government knew exactly what evidence Miss Bachman was referring to because it was the government that produced that discovery. That, yes, Miss Bachman's lawyer... You didn't actually make that argument in the brief, as far as I can recall, though. You both just, you just argued the merits of it without joining the problem at hand, it seemed to me, which was the basis for the district court's ruling. Your Honor, I only have a minute left. If I could move on to my last argument and then try to reserve some time for rebuttal. We'll give you some rebuttal time. And that is the vulnerable victim enhancement, two points. Basically, the district court found that these women were Chinese, weren't familiar with Saipan, didn't speak the language, were uneducated, and were at economic disadvantage. In the legislative history of the Trafficking Victims Protection Act, which 1591A is part of, the legislative history shows that Congress found that traffickers, and I'm reading from 28 U.S.C. 7101, and it's talking about the congressional findings, that traffickers primarily target women, disproportionately affected by poverty, lack of access to education, lack of economic opportunities, and country of origin. Traffickers lure women and girls into the network through false promises of decent working conditions. Traffickers often transport victims from their home communities to unfamiliar destinations, including foreign countries, away from friends, religious institutions, leaving the victims defenseless and vulnerable. Trafficking also involves violations of other law, including labor and immigration. Counsel, I've understood this part of your argument to be, forgive me for interrupting, please, but I've understood this part of your argument to be that in sex trafficking cases, the victims are always vulnerable and you don't think these three were unusually vulnerable, is that right? That's my point. And if you take a look at the legislative findings, which I just quoted, they are the exact findings of fact that the district court relied on to find that they were particularly vulnerable. And they're not particularly vulnerable. They were vulnerable. Except they were taken to a remote island and they didn't speak the language. Those are the two differences, right? Essentially. And that's a normal course of sex trafficking, which, of course, means they're not unusually vulnerable. They are vulnerable, but just not unusually vulnerable. I've run out of time. We'll give you two minutes for rebuttal. Thank you. We'll hear from the government. Good morning, Your Honors. Garth Backe on behalf of the United States Senate Appellant. I'll start with just the interstate commerce argument made by, excuse me, I said for the appellant, for the appellee. The interstate commerce argument made by the appellant, she was also convicted under the theory that she participated in a venture and that she profited from that. That venture is the venture that brought those women over from China. So there's your foreign commerce. That's clear. We also have the check. Did the government mention the foreign commerce clause at any point? It's in the indictment, Your Honor, and I believe it's in the jury instructions. I don't know if that was specifically advocated by the government. I'm sorry, the phrase foreign commerce appears in the indictment? Yes, Your Honor. Okay. You also have the check. You know, the case law says that she caused it to be transported interstate commerce by having it deposited. But last but not least, she transported the victim, XL, to one of the customers' house. By doing so, she used a vehicle, she used gasoline. I think this court can easily take judicial notice that none of those things are manufactured on the tiny island of Saipan. So this is sex trafficking, 18 U.S.C. 1591, which Congress has already made an explicit finding, affects interstate and foreign commerce in a crime that occurred on a very tiny island, a tiny remote island. So, of course, it affected interstate and foreign commerce. Are we going to talk about 412 next? Yes, Your Honor. I have a question about 412, if I could take you straight to it. I don't know. There's a case that we have, it seems to me, to be right on point to Judge Graber's question called La Jolie. I'm not sure if I'm pronouncing that correctly. It's 217F3663, and that case talks about what a court has to do to exclude rape shield evidence under the procedural provision, right, to exclude it for procedural reasons without violating the federal constitution. Did the judge's ruling here comply with what that case says that the court needs to do? Your Honor, I do not know if the court followed the procedure properly. Well, was it cited? Was it an issue? Did she say, I'm applying the two-part test? I mean, these aren't trick questions. I truly don't know the answer, whether those provisions were taken into account. If you're not familiar with the two-part test, I'm not trying to hide the ball here. It says that the sanction has to not be arbitrary or disproportionate, and it says that the trial court must weigh the interest in the defendant's particular case, including consideration of the probative value of the evidence, that that's what needs to happen in order to make sure the defendant's Sixth Amendment rights aren't, that we're weighing that against the rape shield law's intent. And so that's what I'm trying to get at. Actually, my knowledge is more limited in the record in the court's finding than it is with the case that you just mentioned. And I actually met with opposing counsel before, and we were both unsure of, I guess, the status of the record as it shows the court's ruling on 412. The second prong of the test that you just articulated is what I think the death knell of the entire argument being made here on appeal, and it's that it's just not relevant. It's not relevant in any way, shape, or form. And in the brief, the appellant continues to recite the belief that, well, because they went back months afterwards, remember they were first trapped in August of 2008. They go back in, I believe, March of 2009. The appellant over and over says, well, that's relevant to show what happened in August. And I just disagree because I just don't understand that argument for a number of reasons, but one being the crime is complete. The crime has already been complete. It is complete under Willoughby, which is the out-of-circuit case, which is cited by Hornbuckle. His argument is that it's relevant to the question of fraud or coercion. That is, if the victims were, let's say, eager to become prostitutes or happy to become prostitutes and so nobody had to convince them or defraud them or coerce them, I think that's his argument for relevance. So what's your response to that? Well, I know that's his argument, but if we unpack it, if we really wrap our brains around it, how does that make sense? The crime is complete when the predicate act is made with knowledge, when she recruits them, when she transports them, when she obtains them or maintains them. Right there the crime is committed. She is liable. She is exposed to the statutory punishment structure. If they go back later, the crime has still been completed. And I think Judge Bybee made the point that I would just parrot exactly what he said, is how does that show anything? Because of these cases, I think in a typical human trafficking case, the victim eventually, their will is broken, and they start living a lifestyle that they never thought they would have, but it's the only way to survive. And I think it's in some way akin to a domestic violence victim. If the victim is abused by the defendant but goes back months later, is that evidence that it never occurred? No, those are facts and circumstances that occur in these types of situations. So I think victims of human trafficking going back to their trafficker, especially when they have no work authorization, they've been told it's a dangerous place to live out, they don't know anyone, they don't speak the language, they go back, that is completely common. But we have case law in this circuit and other circuits that says prior incidents of trafficking are irrelevant. And I believe Judge Bybee highlighted this and I would agree, that's a better argument in my opinion. That at least has some teeth to it. But consistently in the case law, that is ruled irrelevant. I think the argument is much stronger for post-indictment acts of prostitution. I'd like to ask you about the enhancement for particularly vulnerable victims. In what way were these victims unusually vulnerable compared with other victims of sex trafficking, rather than comparing them to the general population? Yes, Your Honor. And this is a unique statute and I've dealt with it before. And I've had cases where I've looked at the statute in play here, 22 U.S.C. 7101, which lists the characteristics, compared those to my victims and said, no, this isn't an appropriate case for the vulnerable victim enhancement because those are the typical victims. That's not the case here because we have facts above those that are outlined in 22 U.S.C. 7101. In the court, this court, albeit unpublished, a case of U.S.V. Venezuela, which speaks to many of the issues that we are dealing with today, said, while the legislative findings of the Trafficking Victim Protection Act, which includes 1591, recognizes transnational trafficking as a problem and notes that victims are often vulnerable, nothing suggests that the typical victim reaches the level of vulnerability of the victims in this case. And that is what we would submit is the case here and applicable here. The district court's findings, which are outlined in the government's brief, show the reasons given by the district court in applying enhancement. And I'll just highlight the ones that I believe are above those that are outlined in 22 U.S.C. 7101. The legal status of these women, I'll just stick to the one XL, who I'll refer to as XL. She had no lawful status. She was on a tourist visa, which did not allow her to work, a fact that was repeatedly told to her by the defendant, you cannot leave, you will have nothing to do, there is no work for you out there other than this. She was kept under what the district court phrased locking key, watched at all times, supervised at all times, and she was reportedly told that she was nowhere else to run, and the defendant repeatedly told her about the dangers of the community in Saipan, about the story of the child getting hung, or the person going on the local's property, if you're on the local's property you'll probably be shot. Those are things I believe separate this from the typical victim. This is also a victim, this one in particular, she did not speak, she did not read or write either English or Chinese, so she was especially uneducated, and she didn't even really speak Mandarin. Eventually these three people escaped, I'll use that word, I don't mean to be pejorative, but they escaped, by getting a note to the local police department, right? So who wrote that note? Was there testimony about how that really happened? The implication is it could have happened earlier, so I just want to give you a fair chance to respond. No, I am not familiar with that, and I just wouldn't say, I don't think that's a fair application, I mean a fair inference, because again that would be nine months after arriving. They are, you know, just by living on this island, leaving the karaoke bar to be with cousins, they're going to see the island, they're going to get to know the island, they're going to feel more comfortable with the island than they were in August, than they were in, I believe, April, when they eventually did make their cry for help. I believe that is all I have. I think most of the government's arguments are outlined in detail in its brief, and with that I have nothing to add unless the panel has any questions. I don't believe that we do. Thank you. Thank you. Mr. Vance, you may have two minutes for rebuttal. To answer your question, Judge Christian, the court absolutely did not wait. She ruled from the bench there's no written order, and the sum and substance of it is at this time based on what has already been filed and discussed, I basically am denying the defendant's motion for 412 admission for any sexual conduct of the alleged victims pursuant to 412C for failing to specifically describe the evidence, and your request to amend your motion because it's untimely and given the lack of opportunity that would be given to the government is denied. There was no weighing of any constitutional right. And no follow-up written order? I couldn't find one. No. No, Your Honor. To be candid, and this is what Mr. Bakke and I discussed, it appears that the judge perhaps in a chamber's meeting modified that order to some extent. There's absolutely nothing in the record. But the rule suggests that the evidence must be admitted if it would otherwise violate the defendant's rights, but the procedural posture still applies even to an assertion of constitutional right, doesn't it? I believe it is, Your Honor, but I think that the... We assert constitutional rights in cases all the time, and parties forfeit them when they don't file things on time. Right, but I think that her solution had a disproportionate impact. She's basically saying, I'm going to deny your Sixth Amendment right to the confrontation clause. You know, there's a lot more that she said also. She talks about how the declaration is conclusory. We're dealing with three victims. When we discussed the issue of the Rule 15 deposition, I pointed out that the only names I heard, and I'm skipping some words, were Anna and Helen, and no one has attached those names to any of the three victims that are named in the indictment. So your declaration doesn't help me pinpoint the information as to which victim and how it's relevant to the case. So on the face of the motion and declaration, it fails. So I don't understand how that's a violation of your rights if you haven't demonstrated relevance by naming a specific victim to the court. But again, Your Honor, there was a procedural remedy here in which the court could have said, well, I'm going to let you amend because you filed it. The trial counsel did file it timely within the time requirements of the statute. It's just an oral order that the court set, which he violated. The La Joie case did find a violation there. But it's really very different because that was a timeliness. In other words, doing the weighting that I just described, what our court said is a few more days weighed against the defendant's rights, the Sixth Amendment rights. In that particular case, we're very weighty. The evidence was very relevant, and the delay wasn't really going to be very prejudicial and whatnot. It was sort of an arbitrary timeline is all. But this is different. What she found here is that the proffer by the defense was too vague, as Judge Graber has just described. It seemed to be much more substantive, more substantively lacking. Yes, Your Honor. But I think that the given remedy for it would be to allow them to amend. And certainly the government was – the court went on to say, well, you know, I don't want to prejudice the defendant. I mean the government. But the government knew precisely what evidence it was. The self-admitted statements and about the first names, that was from a deposition that the government conducted of the witness, Peter Leal, and which was later admitted into evidence. And Mr. Leal never mentioned any of the government witnesses. He just used first names. Helen came over. The government never connected those names with who the actual government witnesses were. But that would have been the remedy to say, okay, because the government knows exactly what they're talking about, there's going to be no prejudice to the government. Therefore, there should be – I should grant your motion to amend. And that way we could have gotten the Sixth Amendment right there. And, again, the government wouldn't be prejudiced because they knew exactly what the defendant was talking about. Thank you, counsel. The case just argued is submitted. We appreciate counsel's assistance and arguments.
judges: Graber, Bybee, Christen